Merrimack
No. 2003-196

EDWARD SILVA

v.

WARDEN, NEW HAMPSHIRE STATE PRISON & a.

Argued: November 6, 2003
Opinion Issued: December 24, 2003

*Michael J. Sheehan*, of Concord, by brief and orally, for the plaintiff.

*Peter W. Heed*, attorney general (*Michael K. Brown*, senior assistant attorney general, on the brief and orally), for the defendants.

DALIANIS, J. The plaintiff, Edward Silva, appeals an order of the Superior Court (*Fitzgerald*, J.) granting a motion filed by the defendants, the warden and several employees of the New Hampshire State Prison, to dismiss Silva's writ with prejudice. We reverse in part, vacate in part and remand.

Silva, an inmate at the prison, alleged the following facts in his writ. Three different corrections officers assaulted Silva on three different occasions during pat-down searches at the prison. Silva alleges that a corrections officer grabbed his genitals while conducting a pat-down search in January 2001. In March 2001, another corrections officer grabbed Silva's genitals twice during a pat-down search. When Silva objected to the first assault, the corrections officer replied, "Welcome to New Hampshire State Prison," and grabbed his genitals a second time. After Silva complained again, the corrections officer threatened him with disciplinary action and subjected him to a "strip out" search. The strip out search required removal of all clothing and an inspection of body cavities; this search was done in a "slow, exaggerated and humiliating manner." During a pat-down search in July 2001, a third corrections officer grabbed Silva's genitals. When Silva objected, the officer subjected Silva to a "slow, exaggerated and humiliating" strip out search.

First, we address the defendants' motion to dismiss counts III and IV (assault) for Silva's failure to specify adequately the alleged harm in the writ. The standard of review in considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. *Allen v. Dover Co-Recreational Softball League*,

148 N.H. 407, 412 (2002). The facts alleged in the plaintiff's pleadings are assumed to be true and all reasonable inferences are construed in the light most favorable to the plaintiff. *Id.* If the allegations in the writ constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Konefal v. Hollis/Brookline Coop. Sch. Dist.*, 143 N.H. 256, 258 (1998). However, we need not accept allegations in the writ that are merely conclusions of law. *Id.*

Silva's writ provides a detailed description of the events surrounding the alleged assaults. These allegations sufficiently state a claim that would permit recovery for a tort. *See Daigle v. City of Portsmouth*, 129 N.H. 561 (1987). Furthermore, the description of how the harm came about, emphasizing that the searches were done in a "slow, exaggerated and humiliating manner," provides sufficient notice of what the alleged harm is, *i.e.*, harm normally associated with assault. Such harm is readily apparent from the facts in the writ.

█ We recognize damages that do not have physical manifestations, such as mental suffering that may result from an intentional tort. *See Fischer v. Hooper*, 143 N.H. 585, 592-93 (1999). Although Silva did not claim physical injury, lost wages, or medical bills, he did provide information that sufficiently describes emotional harm in the form of embarrassment and humiliation as a result of specific events. Based upon Silva's pleadings, we find his allegations of harm are sufficient. Thus, the trial court erred in granting defendants' motion to dismiss counts III and IV for insufficient allegations of harm.

The trial court also erred when dismissing counts III and IV by ruling that Silva needs expert testimony to prove alleged emotional damages suffered as a result of the claimed assaults. Expert testimony is necessary whenever the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layperson. *Lemay v. Burnett*, 139 N.H. 633, 635 (1995). Where conduct is alleged in a context that is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony. *Id.* at 634.

█ We have held that expert testimony is required to prove physical symptoms suffered from alleged negligent infliction of emotional distress. *See Thorpe v. State*, 133 N.H. 299, 305 (1990). We noted in *Fischer*, however, that damages for mental suffering are recoverable without the necessity of showing actual physical injury or offering expert testimony for the intentional tort of invasion of privacy. *Fischer*, 143 N.H. at 592. Similarly, allegations of an intentional assault do not require expert

testimony to prove damages for emotional and mental suffering. Silva may recover damages for emotional distress and personal humiliation that he proves he actually suffered, if his damage is of a kind that normally results from an assault and is normal and reasonable in its extent. *Cf. Fischer*, 143 N.H. at 592.

■ Although the average juror may not have common knowledge of and everyday experience with specific searches at the State prison, it is within the ken of average lay people what mental and emotional harm might result from "unprivileged physical contact" of the genitals and from a strip-down search done in a "slow, exaggerated and humiliating manner." Therefore, the trial court erred in dismissing counts III and IV for lack of expert testimony.

Finally we address whether the trial court properly dismissed counts V and VI (constitutional violations) with prejudice. Although the defendants argue in their brief that under the Prison Litigation Reform Act an inmate may not recover compensatory damages for mental or emotional suffering without a showing of a specific physical injury, that issue is not properly before us; the sole issue on appeal is whether the trial court properly dismissed counts V and VI with prejudice for failure to exhaust administrative remedies. *See* 42 U.S.C.A. § 1997e (West 2003); *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003). Silva does not contend that the dismissal for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) was in error, but rather that it should have been dismissed without prejudice.

■ ■ Purely procedural dismissals do not bar subsequent actions because they do not rest on a substantive decision on the merits of the case. *In re Proposed Rules of Civil Procedure*, 139 N.H. 512, 516-17 (1995). Here, where Silva's case was dismissed for failure to exhaust administrative remedies, the dismissal was based upon a purely procedural rule; thus, judicial review is not precluded but rather deferred until after the exhaustion of remedies. *See* 2 AM. JUR. 2D *Administrative Law* § 505 (1994); *cf. Konefal*, 143 N.H. at 257.

Additionally, federal courts have entered dismissals without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (where "the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice"); *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (any dismissal for failure to exhaust administrative remedies should be without prejudice). The court may

dismiss with prejudice, however, if administrative remedies are no longer available to the plaintiff. *See Berry v. Kerik*, 345 F.3d 126 (2d Cir. 2003).

The defendants argue that Silva can no longer exhaust his administrative remedies under New Hampshire Department of Corrections PPD 1.16, because it has been modified to impose a specific time limit on the administrative steps that he failed to take. When the alleged events in this case took place, this policy did not include a prohibitory time limit. The modified policy, effective October 1, 2002, states: "As to any claims that exist on the date this policy initially takes effect, these procedures must be used within the time frames established herein as if the date of the event giving rise to the grievance is the effective date of this policy." Therefore, in accordance with the new policy, Silva had thirty days after October 1, 2002, to take the first of three steps necessary to exhaust his administrative remedies.

█ Assuming without deciding that this policy is valid and applicable, we find that the record is inconclusive as to whether Silva took the first necessary step to exhaust his administrative remedies within thirty days of October 1, 2002. At oral argument, Silva asserted that he has exhausted his administrative remedies since the initiation of this appeal. The defendants did not argue that Silva was foreclosed from exhausting remedies because he failed to begin by October 31, 2002, but rather referenced the new policy without addressing whether or not Silva had taken the first step by that time. If Silva had taken the first administrative step within the proper time period, then exhaustion of administrative remedies may still have been available to him, and it may be that counts V and VI should have been dismissed without prejudice. On the other hand, if Silva failed to act before the October 31, 2002 deadline, his administrative remedies were no longer available under the new policy and dismissal with prejudice was proper. Because the record is devoid of evidence on the time of exhaustion, we vacate the trial court's dismissal with prejudice and remand the issue for development of the record with regard to when and if Silva exhausted his administrative remedies. *See Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002).

*Reversed in part; vacated in part; and remanded.*

NADEAU and DUGGAN, JJ., concurred.